UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY DRIVER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DR. KAHLON, et al.,<br><br>　　　　Defendants. | No.  2:25-cv-1287 CSK P<br><br><br>ORDER AND<br><br>FINDINGS & RECOMMENDATIONS |

I.     PLAINTIFF'S ALLEGATIONS

    Plaintiff is a state prisoner proceeding pro se with a civil rights action brought under 42 U.S.C. § 1983.  As set forth below, it is recommended that this action be summarily dismissed for failure to exhaust administrative remedies prior to filing this complaint, and plaintiff's requests for injunctive relief be denied without prejudice.

    In his verified complaint, plaintiff alleges the following.  (ECF No. 1.)  On April 23, 2025, Dr. Delgadillo interviewed plaintiff in connection with his administrative grievance ("HC 602") in which plaintiff sought termination of the anti-psychotic drug Haldol because it causes plaintiff to suffer chest pains, heart palpitations, and kidney pain.  (Id. at 2.)  Dr. Delgadillo told plaintiff his HC 602 was going to be denied.  (Id.)  During the interview, Dr. Delgadillo noted plaintiff suffered side effects on March 24, 2025, which "showed abnormalities of bradycardia, etc.," but Dr. Delgadillo would not stop the Haldol prescription.  (Id.)  Dr. Delgadillo told plaintiff if he

1

was not satisfied, he could file another grievance because the Chief Psychiatrist Dr. Ozbayrak approved the involuntary medication order for plaintiff. (Id.)

On April 23, 2025, Dr. Kahlon informed plaintiff that he would be injected with Haldol on April 29, 2025, and Dr. Kahlon was "not concerned" about plaintiff's alleged side effects. (Id. at 1-2.) Dr. Kahlon told plaintiff he must come out for the injection, or he would be cell extracted; Dr. Kahlon was not going to stop the Haldol injection. (Id. at 2.)

On April 29, 2025, Psychiatric Tech Asabor put a band-aid on plaintiff's injection site. (Id. at 3.) The April 29, 2025 injection was the 76th injection plaintiff has received since December 18, 2018. (Id.) Plaintiff states he is in constant pain from the injections, and the Haldol causes him chest pains, heart palpitations and kidney pain. (Id.)

Plaintiff seeks unspecified injunctive relief, including a preliminary injunction and temporary restraining order, money damages, and the appointment of counsel. (Id.)

Plaintiff names as defendants Dr. Kahlon and Dr. Delgadillo, both psychiatrists; Chief Psychiatrist Dr. Ozbayrak; and Psychiatric Tech Asabor. (Id. at 1.)

II.     EXHAUSTION REQUIREMENTS

Pursuant to the initial screening of a complaint under 28 U.S.C. § 1915A, a court may dismiss an action for failure to exhaust administrative remedies. See Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002) (affirming district court's sua sponte dismissal of prisoner's complaint because he failed to exhaust his administrative remedies). Thereafter, failure to exhaust is an affirmative defense that must be raised and proved by the defendant. Wyatt v. Terhune, 315 F.3d 1108, 1112 (9th Cir. 2003).

A. The Prison Litigation Reform Act

It is well established that the Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his available administrative remedies before bringing a federal civil rights action. See 42 U.S.C. § 1997e(a); Ross v. Blake, 578 U.S. 632, 638-39 (2016); Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison

life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Bennett v. King, 293 F.3d at 1098 (internal quotation marks omitted) (citing Porter v. Nussle, 534 U.S. 516, 532 (2002) (exhaustion requirement applies to all prisoner suits relating to prison life).) "[A] prisoner must 'complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court.'" Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010) (quoting Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009)). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross, 578 U.S. at 640, 642-43. An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). The Supreme Court has explained that the PLRA's

> language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies. . . . [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust -- irrespective of any "special circumstances."

Ross, 578 U.S. at 638-39 (internal citations omitted). Thus, even plaintiff's alleged "imminent danger of physical harm" does not constitute "special circumstance" exempting him from the exhaustion requirement.

      B.  California's Regulations Governing Administrative Exhaustion

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (quoting Jones, 549 U.S. at 218). In order to exhaust, the prisoner is required to complete the administrative review process in accordance with the prison's procedures. Woodford, 548 U.S. at 90. The appeal process is initiated by an inmate filing a "Form 602" the "Inmate/Parolee Appeal Form," and describing the specific issue under appeal and the relief requested. The California prison grievance system requires a two-step procedure for inmate grievances. See Cal. Code Regs., tit. 15, § 3999.225-

3

.230. The first level of review is the institutional level of review. Id., § 3999.228(a). The second level of review is the headquarters level of review. Id., § 3999.230(a). The headquarters level is the final level of health care grievance review. Id., § 3999.230(h). "An inmate exhausts administrative remedies by obtaining a decision at each level." Reyes, 810 F.3d at 657 (citation omitted).

### C. Discussion

Here, it is obvious from the face of plaintiff's complaint that he did not exhaust his administrative remedies prior to bringing this action because during the April 23, 2025 grievance interview, Dr. Delgadillo told plaintiff his HC 602 was going to be denied. (ECF No. 1 at 2 (emphasis added).) Plaintiff signed his complaint on April 29, 2025. (Id. at 3.) Plaintiff was required to wait until he received the written denial of his HC 602, and then file an appeal to the headquarters level of review and await the headquarters' decision before filing his complaint in federal court.

The Court observes that plaintiff is aware of the exhaustion requirement. In one of plaintiff's prior cases, on May 10, 2023, the court reviewed six grievances filed by the plaintiff and determined that all but one claim had not been exhausted prior to suit.[1] Driver v. Kern Cnty. Super. Ct., No. 2:20-cv-1665 TLN KJN P (E.D. Cal.) (ECF No. 227 at 6, 29-32). The findings and recommendations were adopted June 27, 2023. Id. (ECF No. 233.)

The Court finds that plaintiff failed to exhaust his claims against defendants prior to filing this action, which is obvious from the face of the complaint. Because plaintiff must administratively exhaust his claims before again bringing them before this court in a civil rights action, the undersigned recommends dismissal of his complaint without leave to amend, but recommends dismissing the action without prejudice to plaintiff filing a new civil rights complaint once he has exhausted his administrative remedies.

///

---

[1] A court may take judicial notice of court records. See, e.g., Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotation omitted).

III. INJUNCTIVE RELIEF

In his complaint, plaintiff requests a "preliminary injunction," a "temporary restraining order," and "permanent injunctive relief." (ECF No. 1 at 3.)

A. Legal Standards

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate, and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Temporary restraining orders are generally governed by the same standard applicable to preliminary injunctions, except that preliminary injunctions require notice to the adverse party. See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc., 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001); Fed. R. Civ. P. 65(a). Eastern District of California Local Rule 231 requires notice for temporary restraining orders as well, "[e]xcept in the most extraordinary of circumstances," and the court considers whether the applicant could have sought relief by motion for preliminary injunction at an earlier date. E.D. Cal. Local Rule 231(a)-(b). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 439 (1974).

A temporary restraining order is "an extraordinary remedy" and may be issued only if plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; and (4) that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Plaintiff bears the burden of clearly satisfying all four prongs. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). A temporary restraining order will not issue if plaintiff merely shows irreparable harm is possible—a showing of likelihood is required.

5

1 <u>Id.</u> at 1131.

2 Procedurally, a federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. See <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u>, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend.").

Finally, the PLRA imposes additional requirements on prisoner litigants seeking preliminary injunctive relief against prison officials. In such cases, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); <u>Villery v. California Dep't of Corr.</u>, 2016 WL 70326, at *3 (E.D. Cal. Jan. 6, 2016). As the Ninth Circuit observed, the PLRA places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." <u>Gilmore v. People of the State of California</u>, 220 F.3d 987, 998-99 (9th Cir. 2000).

B.   <u>Discussion</u>

Plaintiff has not provided the certification required by Federal Rule 65(b)(1). Accordingly, the request for a temporary injunction is defective and should be denied. Indeed, plaintiff filed his request in his complaint, and therefore his complaint has not been screened, and no defendant has been served with process. Until defendants have been served with process, this court lacks personal jurisdiction over them, and may not grant the injunctive relief he seeks. See Fed. R. Civ. P. 65(d)(2); <u>Murphy Bros, Inc.</u>, 526 U.S. at 350.

Further, plaintiff did not address the elements required under <u>Winter</u>: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

Winter, 555 U.S. at 20. In addition, plaintiff failed to identify the specific injunctive relief he seeks.

For the above reasons, the Court recommends that plaintiff's requests for injunctive relief (ECF No. 1 at 3) be denied without prejudice.

IV. REQUEST FOR APPOINTMENT OF COUNSEL

Plaintiff seeks the appointment of counsel. District courts lack authority to require counsel to represent indigent prisoners in section 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). In exceptional circumstances, the court may request an attorney to voluntarily represent such a plaintiff. See 28 U.S.C. § 1915(e)(1); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990). When determining whether "exceptional circumstances" exist, the court must consider plaintiff's likelihood of success on the merits as well as the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (district court did not abuse discretion in declining to appoint counsel). The burden of demonstrating exceptional circumstances is on the plaintiff. Id. Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that warrant a request for voluntary assistance of counsel.

Having considered the factors under Palmer, the Court finds that plaintiff has failed to meet his burden of demonstrating exceptional circumstances warranting the appointment of counsel at this time. Plaintiff's request for the appointment of counsel is denied without prejudice.

V. CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for the appointment of counsel (ECF No. 1 at 3) is denied without prejudice.

2. The Clerk of the Court is directed to assign a district judge to this case.

Further, IT IS RECOMMENDED that:

1. Plaintiff's motions for injunctive relief (ECF No. 1 at 3) be denied without prejudice.

7

2. This action be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 7, 2025

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/driv1287.osc